```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Joy L. Baird, et al.,           :

        Plaintiffs,              :

    v.                           :      Case No.  2:11-cv-634

Unum Group, et al.,              :
                                        Magistrate Judge Kemp
        Defendants.              :
```

                         OPINION AND ORDER

    Plaintiffs Joy and Jack Baird filed this ERISA-based action after Joy's workplace insurer, Unum, terminated long-term disability benefits which had been awarded to her in 1994.  Unum also told Joy that she should only have received benefits for two years and that it had overpaid her to the tune of some $180,000.00.  She has exhausted her administrative remedies.  In this case, she seeks reinstatement of her benefits, an award of past due benefit payments, and a finding that she is eligible to keep getting benefits until she turns 65, which will happen in 2015.
    Unum filed the administrative record under seal on October 11, 2011.  After efforts at mediation failed to resolve the case, Joy filed a motion for judgment on the administrative record on May 15, 2012.  Unum responded on June 15, 2012.  Joy did not file a reply brief.  The case is now ready to decide, and will be decided by the Magistrate Judge pursuant to the parties' consent and the Court's order of reference entered pursuant to 28 U.S.C. §636(c).  For the reasons which follow, the Court decides this case in favor of the defendants and directs the Clerk to enter judgment in their favor.

I.   The Facts.

The parties have stated the facts accurately in their memoranda, and few of them are disputed.  It is helpful to note at the outset that this is not a case about whether Joy is disabled.  The reason her benefits were terminated has nothing to do with her medical condition.  Rather, Unum based its decision on a limitation in the policy that, in its view, capped Joy's benefit period at 24 months. Were that the case, Unum should have stopped paying her benefits in 1996.  Unum claims that the error which caused it to keep paying her after that date was not discovered until 2010.  When it came to light, Unum stopped her payments.  Joy argues that the record does not support that decision.

There are not many documents in the record that bear on this issue.  One, of course, is the policy issued to Joy's employer, a company now known as GATX Logistics.  In Section I, entitled "Policy Specifications," eligible employees are divided into two classes: "[e]xempt employees with a salary grade of 25 and higher," and "[e]xempt employees with salary grades of 20 through 24."  (Doc. 19, PAGEID #121)("PAGEID" numbers are generated by the Court's electronic filing system, and the Court will use those numbers when it refers to the administrative record). Section I(3) of the policy specifies the "Maximum Benefit Period."  For Class 1 employees who become disabled at less than 60 years of age, the maximum benefit period is "[t]o age 65 but not less than 60 months."  Id.  For Class 2 employees who become disabled at less than 68 years of age, the maximum benefit period is "2 years."  Id. at #122.  The policy makes it clear that "[d]isability benefits will cease on the earliest of," among other dates, "the end of the maximum benefit period."  PAGEID #130.  Somewhat oddly, however, the policy also defines disability for a Class 2 employee as meaning, first, that the

employee (or insured) "cannot perform each of the material duties of his regular occupation," and then, "after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience." PAGEID #126. It is curious that if a Class 2 employee cannot recover more than 24 months of benefits under any circumstances, the drafters of the policy found it necessary to define under what circumstances such an employee would be considered disabled after that time. More on that later.

Notwithstanding this apparent inconsistency, it seems plain that the policy intended to tie payment of benefits to employees who meet the definition of disability to two factors: age and salary grade, which is translated into "class." Everyone agrees that Joy was less than 60 years of age when she became disabled. The crucial question is whether she was a Class 1 or a Class 2 employee. The policy does not define or explain the differences in these two types of employees beyond the salary grades recited above; presumably, the employer was the one who set the salary grades of its employees, and the policy meant to refer to those grades.

As noted, only a handful of documents speak either directly or tangentially to this issue. It is true that, in connection with some offers made by Unum to pay Joy a lump sum rather than continued monthly payments, Unum represented that "Ms. Baird's group disability policy provides a monthly benefit that will continue for the duration of her lifetime, or age 65, whichever is less, as long as she continues to meet the policy definition of disability." (Doc. 19, PAGEID #183). And it is apparent that Unum believed this statement, made in 2004, to be correct, or it would not have been offering her a buyout based on an actuarial calculation of the value of her continuing stream of payments.

In fact, it concedes as much, stating that it was mistaken about her maximum benefit period all the way up to 2010.  Its calculation forms also show that her benefits continued to age 65.  See, e.g., Doc. 19, PAGEID# 187.  On the other hand, a document entitled "New Claim Checklist" which begins at PAGEID #266 contains a handwritten note on the second page which says "Salaried Class 2."  Someone also checked off boxes which show Joy to have been a member of "Eligible Class" and that the "Class #" was "2."  PAGEID # 267.  Those documents appear to have been completed by Unum in 1994 when Joy submitted her claim.  Another Unum-generated document, entitled "Management File Review," PAGEID #425, which appears to be dated December 23, 1994, has the number "24" in a box titled "Claim Duration," which could also have been a reference to the 24-month maximum benefit period.

There is other evidence from which it can be inferred that Unum should have appreciated, from the beginning of the claim, the fact that Joy was a Class 2 employee.  Its initial letter awarding her benefits, dated July 26, 1994, told her that benefits were "payable as long as you continue to remain disabled as defined and meet all other provisions as outlined in the contract," and it quoted the definition of disability that applied only to Class 2 employees.  PAGEID #435-36.  In 1995 and 1996, a Unum Disability Benefit Specialist, Beverly Valdez, wrote Joy two letters dealing specifically with the question of determining her continuing eligibility for benefits.  Given the maximum benefit period stated in the policy, one would have thought that these letters would simply have told Joy she would not get any  payments after 24 months had elapsed.  Instead, each letter, like the initial letter, cited to the policy provisions defining "disability" and "disabled" for Class 2 employees.  PAGEID #359, #408.  The first letter, sent in June, 1995, advised Joy that Unum was "beginning to review your eligibility for

benefits beyond the 24th month." The second, written on January 26, 1996, addressed the specific issue of "benefit eligibility beyond 02/10/96," (which happens to be the two-year or 24-month anniversary of her first benefit payment) and told Joy that she remained "eligible for benefits at this time." Again, in somewhat contradictory fashion, the letter also said that "[b]enefits will continue to 02/10/96 ... provided you remain disabled according to the terms of the policy." PAGEID #359. Unum continued to pay benefits after February 10, 1996, however, and periodically asked Joy to update her medical records so that it could continue to judge her eligibility for benefits. See, e.g., PAGEID #353 (1996 letter from Brendan O'Donnell, Disability Benefit Specialist, to Joy Baird); PAGEID #528 (2007 letter from Judith Boucher, Benefits Center Representative, to Joy Baird). It also seems that Unum sometimes reviewed "the policy" when, for example, determining in 2009 that it had slightly underpaid Joy over the 15-year period during which she received benefits. See PAGEID 560-61.

2010 is when things changed. A document with a "Notify Date" of February 18, 2010, states this:

> Following extensive review of claim it has been determined that the claimant was only entitled to 24 months of benefit payments. She falls under class 2 which is "All Exempt Employees with salary grades of 20 through 24" and she was confirmed as salary grade 23 during TPC w/ ER on 06/20/94 which is contained in the paper claim file.
>
> The claims system read correct duration of 24 months. Correct policy was contained in claim file. The duration was manually overriden to be to the age of 65 and is not supported by the policy.

PAGEID #624. Joy was advised of this problem on February 26th of that year. Her attorney, Bruce Hyslop, then asked for documentation of the fact that she was a Class 2 employee. In

response, Unum sent Mr. Hyslop a letter attaching a document headed "Claim File Documentation" reflecting a telephone call with Sherri Cagle sometime in June, 1994. The notes indicate that "she" (no specific name is in the notes) was at pay level 23 effective on June 3, 1991. Joy Baird's name does not appear anywhere on this document, which is PAGEID #652.

## II.  The Administrative Appeal

Joy's appeal of the decision to terminate her benefits was made through a letter written by Mr. Hyslop to Unum on May 14, 2010. In that letter, Joy contested the determination of her salary grade, stating that "[w]e can only assume that the proper examiners with proper information determined that Joy was a Class 1 employee." She also argued that the document Unum relied upon did not sufficiently identify her and there was no explanation of how it had been misplaced or lost for sixteen years. Finally, she noted that a large number of Unum representatives had, over the years, approved continuing her benefit payments. She also raised some state law issues such as detrimental reliance, laches, and bad faith. See PAGEID #662-665.

Unum decided the appeal on June 15, 2010. It concluded that although Unum had correctly been advised that Joy was a Class 2 employee (and it provided a detailed explanation of why it believed the recently-uncovered notes of the telephone conversation with Sherri Cagle did, in fact, relate to Joy's claim - mostly because Ms. Cagle was Unum's contact person at Joy's employer and the note is dated the same day as a telephone call between Joy and Unum about her claim), when a "system generated document" (which appears to be PAGEID #358) from 1996 showed that the benefits period had expired, that document was manually overriden by one of its benefits specialists, Brendan O'Donnell, who apparently thought that the reason benefits were set to expire was that Joy's disability had been incorrectly

designated as psychological rather than physical, and that only psychological benefits expired after 24 months. That mistake was not detected until the 2010 file review took place. Unum responded to the state law issues by noting that it had waived any recovery of the overpayments. Because that was Unum's final decision, Joy then filed this lawsuit.

### III. Discussion.

Each party has submitted a fairly short memorandum. They recognize that Joy's claims arise exclusively under ERISA, and specifically 29 U.S.C. §1132, and present their arguments in that context. Joy's argument is simply that the document used by Unum to support its decision - the note of the telephone call to Sherri Cagle which does not contain Joy's name or make specific reference to her claim - does not outweigh the sixteen-year history of approval of payments to her as if she were a Class 1 employee. Therefore, she must have been such an employee. If not, however, she argues that Unum did not give her timely notice of its action as required by 29 C.F.R. §2560.503-1(f)(3); had it done more promptly, she might have been able to show that her employer regarded her as a Class 1 employee, but due to the passage of time she cannot do so now.

Unum's argument is similarly straightforward. It does address, briefly, the standard of review which the Court must use here (Unum argues for an arbitrary and capricious standard, but also contends that its decision should be upheld even if the Court's review is *de novo*) - and contends that the key document bears enough evidence of authenticity and of a relationship to Joy's claim to make Unum's reliance on it reasonable. It responds to the timeliness argument by noting that it acted very promptly after it discovered its mistake and, in any event, the complaint does not plead a claim based on the lack of timely notice.

### A. <u>Standard of Review</u>

In any ERISA case, it is important to identify, at the outset, the proper standard of review. There is a significant difference in the way the Court conducts its analysis if the question is whether the plan administrator's decision is arbitrary and capricious, as opposed to whether the Court would independently reach the same decision from the administrative record. This plan does not contain more typical language vesting discretionary authority in Unum to make benefit decisions, so the question is whether the plan language Unum relies on in arguing for the more lenient standard of review is legally sufficient to justify that type of judicial scrutiny.

Unum cites to some of the policy's general provisions in support of its argument for an arbitrary and capricious standard of review. As it notes, the policy requires that an applicant for benefits submit a proof of claim and it allows Unum to ask a beneficiary to submit to either an interview or a medical examination, or both. These provisions, says Unum, "demonstrate the requisite discretionary authority." Unum's Brief in Opposition, Doc. 27, at 5 n.3. Unum cites no case law to support this particular argument, and the cases from the Sixth Circuit Court of Appeals are not particularly helpful to Unum's position.

Although Unum correctly notes that no "magic language" is needed in order for a plan to vest discretionary authority in the administrator to determine eligibility for benefits or to construe the language of the plan, there must be some language that does so. Thus, in <u>Perez v. Aetna Life Ins. Co.</u>, 150 F.3d 550 (6th Cir. 1998), the Court found that a plan provision requiring "satisfactory evidence" of disability was enough to vest discretion in the administrator. However, in <u>Hoover v. Provident Life and Acc. Ins. Co.</u>, 290 F.3d 801 (6th Cir. 2002), it deemed the absence of the word "satisfactory" to be

significant, noting that provisions which merely require "proof" of loss do not, by themselves, create the type of discretion required to support an arbitrary and capricious standard of review.  The Hoover court also "reject[ed] the idea that [the administrator] reserved itself discretion by providing that it may require physical examination at its own expense."  Id. at 808.  Again, it focused on the fact that the policy did not require that the examination produce satisfactory evidence of disability.

The same is true of Unum's policy here.  Other judges of this Court have construed similar language - in fact, arguably broader language that requires "due proof" of disability - not to vest discretion in the plan administrator.  See, e.g., Rist v. Hartford Life and Acc. Ins. Co., 2011 WL 2489898 (S.D. Ohio Apr. 18, 2011), adopted and affirmed 2011 WL 2559372 (S.D. Ohio June 21, 2011).  And the Court of Appeals has, in an unpublished decision, considered what would appear to be similar if not identical provisions of a Unum policy as not vesting in Unum the kind of discretion needed to support an arbitrary and capricious standard of review.  See Torello v. UNUM Life Ins. Co. of America, 201 F.3d 441 (6th Cir. December 3, 1999).  Other courts considering identical policy language have also rejected Unum's argument.  See, e.g., Tavares v. Unum Corp., 17 F.Supp. 2d 69 (D.R.I. 1998).  This Court concludes that Unum has not met its burden of proof as to the arbitrary and capricious standard of review, and that the Court must review Unum's decision on a *de novo* basis.

It is important to describe what a *de novo* review entails in the context of an administrative decision made under an ERISA plan.  The Court does not take new evidence.  Rather, it must "review the administrator's decision *de novo*, that is without deference to the decision or any presumption of correctness,

based on the record before the administrator." Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir. 1990). As this Court has said, that means the district court "must consider 'the proper interpretation of the plan and whether an employee is entitled to benefits under it'" when it decides such a case. Mitchell v. First Unum Life Ins. Co., 65 F.Supp. 2d 686, 692-93 (S.D. Ohio 1998), quoting Perry, supra, at 966-67.

                        B.   The Merits of Joy's Claim.

Most cases require the Court to resolve both issues of fact and issues of law, and this one is no different. The Court begins with the key issue of fact: Joy's status as either a Class 1 or Class 2 employee.

It certainly would have been helpful had there been more evidence before the administrator on this issue. For example, any evidence from Joy's employer as to what it meant by the various pay grades described in the plan, or how it determined that an employee was within a certain pay grade, would have shed a good deal of light on the question of where Joy fell on that scale back in 1993. Nevertheless, as Perry indicates, the Court cannot take additional evidence on that point, at least where there was an opportunity (as there was here) for Joy to have submitted additional evidence to the plan administrator. She did not, so the Court must look to the existing record for evidence as to her pay grade.

There is no question that evidence exists to support the proposition that she was a pay grade 23, or at least that she fell within the plan's definition of a Class 2 employee. In addition to the notes of the call to Sherri Cagle, which does contain enough circumstantial evidence to persuade the Court that it more likely than not pertains to Joy's claim, there is the "New Claim Worksheet" which clearly deals with her claim and which says, at PAGEID 267, that she is a Class 2 employee. There

-10-

are also the various letters written by Unum employees which consistently cite the definition of disability which applies to Class 2, but not Class 1, employees.  There is the letter (PAGEID #359) which states directly that Joy's eligibility for benefits was confirmed through February 10, 1996, the 24-month anniversary of the granting of her claim - a date which, if 24 months were not a relevant time period, would have little meaning.  And there are documents that suggest at least a plausible explanation for Unum's failure to enforce this limit, including the transfer of responsibility for Joy's claim to a different office and different Unum employee only a few days before the end of the 24-month period, see PAGEID #357 (Letter from Brendan O'Donnell to Joy Baird dated February 5, 1996, explaining that her claim was going to be administered out of Unum's home office in Portland, Maine - it had previously been in the Atlanta, Georgia office), and Mr. O'Donnell's subsequent override of a Unum's system, which had terminated Joy's benefits as of February 10, 1996.

   By contrast, the evidence that Joy actually was a Class 1 employee is virtually nonexistent.  Not a single document in the file says she was.  Certainly, Unum treated her that way after Mr. O'Donnell intervened in 1996, at least in terms of paying benefits, but it never generated a letter which alluded to the standard of disability applicable to Class 1 employees.  Its numerous file reviews after that date could not have reasonably led any of Unum's representatives to conclude that they were dealing with a Class 1 employee, because nothing in the file supports that conclusion.  Unum's employees did conclude, apparently, that they were dealing with someone who was entitled to benefits up to age 65, but the record indicates that at various times (but not at the exact time Joy became disabled) Class 2 employees were entitled to that longer benefit period, so the fact that she was a Class 2 employee may not have been a red

flag to those reviewers as long as they did not independently confirm which version of the policy was in effect at the time her disability began.  Overall, the evidence that she was a Class 2 employee, while not terribly strong, is more persuasive than the evidence she was a Class 1 employee, and the Court so finds.

The legal impact of that determination seems clear.  Joy has not argued that, as a Class 2 employee who became disabled in 1993, she was entitled to more than 24 months of benefits under the policy in effect at that time.  The policy states clearly in two different places that the maximum benefit period for Class 2 employees, no matter what the cause for their disability, is 24 months.  Although it also includes a definition of disability for Class 2 employees which discusses what they need to prove after receiving 24 months of benefits - something that is precluded by other provisions in the policy - that definition would be useful if, as happened here, the policy were changed from time to time to allow Class 2 employees to receive more than 24 months of benefits.  Since Joy has not made an argument that even if she were properly determined to be a Class 2 employee, this particular policy can somehow be construed in a way that entitled her to more than 24 months of benefits, her claim under the policy itself must fail.

The only other issue she raises here is the lack of timely notice.  The regulation she cites, 29 C.F.R. §2560.503-1(f)(3), has this to say about timely notice:

> Disability claims. In the case of a claim for disability benefits, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 45 days after receipt of the claim by the plan. This period may be extended by the plan for up to 30 days, provided that the plan administrator both determines that such an extension is necessary due

>to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the plan expects to render a decision.

By its terms, this section would not appear to apply to situations where a claim is granted. Most situations where a claim is granted, and then benefits are terminated at a later date, do not allow for the termination decision to be communicated "not later than 45 days after receipt of the claim by the plan." Joy does not dispute that she received timely notice of Unum's decision to terminate her benefits after Unum came to that decision in 2010. Further, if there is noncompliance with this regulation, the proper remedy is not ordinarily to award benefits but simply to cure whatever timing problems the lack of compliance caused, see Murphy v. Wal-Mart Associates' Group Health Plan, 928 F.Supp. 700, 708 (E.D. Tex. 1996), unless the plaintiff can show that the "failure to provide proper notice affected the outcome of the decision." Smith v. Blue Cross Blue Shield of Massachusetts, Inc., 597 F.Supp. 2d 214, 222 (D. Mass 2009).

Joy has suggested that the long delay in notifying her of her lack of eligibility for more than 24 months of benefit payments may have affected her ability to show that she was a Class 1 employee. However, she did not submit any evidence to the administrator in support of that claim, nor did she submit any evidence at all to suggest that, if given more time, she might be able to produce evidence that she actually was a Class 1 employee. Since this Court is, again, limited to the administrative record, it cannot find that Joy was prejudiced by any delay here, even were the Court to conclude (which it does not) that, as a matter of law, Unum violated 29 C.F.R. §2560.503-1(f)(3). Thus, this argument, which is the only other one raised

-13-

in Joy's motion for judgment on the record, also fails.

## IV. Conclusion and Order

For the reasons set forth in this Opinion and Order, the Court denies Plaintiffs' Motion for Judgment on the Administrative Record (#26) and grants judgment to defendants Unum Group and Unum Life Insurance Company of America on her claims. This case is dismissed with prejudice. The Clerk is directed to enter judgment in favor of the defendants.

/s/ Terence P. Kemp
United States Magistrate Judge